Malcolm Segal (SBN 075481)
**Segal & Associates, PC**
500 Capitol Mall, Suite 600
Sacramento, CA 95814
Telephone: (916) 441-0886
msegal@segal-pc.com

Steven A. Zalesin *(pro hac vice)*
Joshua Kipnees *(pro hac vice)*
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2000
sazalesin@pbwt.com
jkipnees@pbwt.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIRREON GOODSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KENVUE BRANDS LLC,<br><br>Defendant. | Case No: 2024-cv-03152-DC<br><br>**DEFENDANT KENVUE BRANDS LLC'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date: March 21, 2025<br>Time: 1:30 p.m.<br>Crtrm: 8, 13th Floor<br>Judge: Hon. Dena Coggins |

Kenvue's Motion to Transfer Venue [28 U.S.C. § 1404(a)]

**TO ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on March 21, 2025, at 1:30 p.m. or thereafter as soon as the matter may be heard, at the above noticed time and place, Defendant Kenvue Brands LLC, upon the accompanying Declarations of Leslie Bloom ("Bloom Decl.") and Joshua Kipnees ("Kipnees Transfer Declaration"), the following Memorandum of Law, and all the pleadings and proceedings heretofore had herein, through counsel of record, will and hereby does move for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court for the Eastern District of Pennsylvania.

Dated: December 23, 2024               **Segal & Associates, PC**

/s/   *Malcolm Segal*
Malcolm Segal


**Patterson Belknap Webb & Tyler LLP**

/s/   *Steven A. Zalesin*
Steven A. Zalesin
Joshua Kipnees

*Attorneys for Defendant*

**MOVANT KENVUE BRANDS LLC'S MEET AND CONFER STATEMENT**

I, Joshua Kipnees, representing Kenvue Brands LLC ("Kenvue"), hereby certify that as counsel for Kenvue, I participated in several telephone calls and exchanged correspondence with Timothy Fisher and Brittany Scott, counsel for Plaintiff, in an effort to resolve the issues presented by this motion without the need for motion practice. The parties have exhausted meet and confer efforts following a phone call on December 10, 2024, and subsequent correspondence.

Dated: December 23, 2024          **Patterson Belknap Webb & Tyler LLP**

/s/   Joshua Kipnees
Joshua Kipnees

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.    Plaintiff's Allegations ................................................................................... 2

    B.    Kenvue's Tylenol Teams .............................................................................. 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I.    This Case Could Have Been Brought in the Eastern District of Pennsylvania .......... 4

II.    The Interests of Convenience and Justice Will Be Served by Transfer ..................... 5

    A.    The Convenience of the Parties .................................................................... 6

    B.    The Convenience of the Witnesses .............................................................. 7

    C.    Ease of Access to Evidence ........................................................................... 8

    D.    Local Interest in the Controversy .................................................................. 8

    E.    The Relevant Court Congestion of Each District ......................................... 9

    F.    Familiarity With the Governing Law .......................................................... 10

    G.    Plaintiff's Choice of Forum ......................................................................... 11

III.    District Courts Within This State Have Granted Transfer Motions in Similar Contexts ................................................................................................................... 12

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ace Mold (Heifei) Co. Ltd. v. AliphCom*,
  No. 15-cv-8127-RSWL-E, 2016 WL 8252923 (C.D. Cal. Oct. 17, 2016) .............................. 8

*Baird v. OsteoStrong Franchising, LLC*,
  No. 22-cv-02010-TLN-DMC, 2022 WL 705883 (E.D. Cal. Mar. 9, 2022) ........................... 4

*Bowen v. McKesson Corp.*,
  No. 12-cv-1906-LJO-SKO, 2016 WL 1626784 (E.D. Cal. Apr. 25, 2016) ........................... 3

*Garcia v. 3M Co.*,
  No. 09-cv-01943-RMW, 2009 WL 3837243 (N.D. Cal. Nov. 16, 2009) .......................... 12

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir. 1985) ................................................................................................. 3

*Hawkins v. Gerber Prod. Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013) .............................................................................. 8, 9

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ................................................................................................. 4

*Jovel v. i-Health, Inc.*,
  No. 12–cv-05526-DDP-JCG, 2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) ......................... 9

*LaCross v. Knight Transportation, Inc.*,
  95 F. Supp. 3d 1199 (C.D. Cal. 2015) ................................................................................ 10

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ............................................................................................... 10

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ............................................................................................... 11

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ............................................................................................... 11

*Meza v. Procter & Gamble Co.*,
  No. 23-cv-00091-JGB-SHKX, 2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) ............... *passim*

*Mina v. Red Robin Int'l, Inc.*,
  No. 20-cv-189472-PSG, 2020 WL 4037163 (C.D. Cal. Mar. 3, 2020) .......................... *passim*

*Morgan v. Rohr, Inc.*,
   No. 19-cv-00800-TLN-KJN, 2020 WL 1451583 (E.D. Cal. Mar. 25, 2020) ...................... 3, 4

*N.S.B. v. Pascarella*,
   No. 22-cv-29-KJM-KJN-PS, 2020 WL 3492562 (E.D. Cal. June 26, 2020) .......................... 4

*Prescott v. Bayer HealthCare LLC*,
   No. 20-cv-00102-NC, 2020 WL 3505717 (N.D. Cal. June 29, 2020) ................................... 11

*Rikos v. Procter & Gamble Co.*,
   No. 10-cv-1974-BEN-CAB, 2011 WL 1456096 (S.D. Cal. Apr. 13, 2011) ............................ 9

*Romoff v. Johnson & Johnson Consumer, Inc.*,
   No. 22-cv-75-LL-WVG, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022) ........................ *passim*

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................................................. 5

*Seymour v. Doe 1*, No. 22-cv-01146 GSA-PC, 2024 WL 1095723 (E.D. Cal. Mar.
   13, 2024) ............................................................................................................................... 10

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................................... 1

*Williams v. WinCo Foods, LLC*
   No. 2:12-cv-02690-KJM, 2013 WL 211246 (E.D. Cal. Jan. 10, 2013) ................................... 6

**Statutes**

28 U.S.C. § 1332(d)(2) .................................................................................................................. 5

28 U.S.C. § 1332(d)(5) .................................................................................................................. 5

28 U.S.C. § 1391(b)(1) .................................................................................................................. 5

28 U.S.C. § 1391(b)(2) .................................................................................................................. 5

28 U.S.C. § 1404(a) ............................................................................................................. 1, 3, 4, 5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KENVUE'S MOTION TO TRANSFER VENUE [28 U.S.C. § 1404(a)]**

Defendant Kenvue Brands LLC ("Kenvue") respectfully moves this Court for an order transferring this case to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a).

**INTRODUCTION**

This action should be transferred to the Eastern District of Pennsylvania because it is, by far, the most convenient venue for this putative nationwide class action. The Eastern District of Pennsylvania is Kenvue's main office for manufacturing and marketing the product at issue, Tylenol® PM, and it is the forum that will be most convenient for the witnesses and presentation of evidence. The purpose of Section 1404(a) "is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Transfer of this case satisfies all of these purposes.

This action meets the two-part test for transfer under the Section 1404(a): *First*, Plaintiff could have brought this action in the Eastern District of Pennsylvania, which has both subject matter and personal jurisdiction, and where venue is proper. *Second*, the convenience of the parties and witnesses, and the interests of justice, support transfer. The Eastern District of California's only connection to this case is that Plaintiff lives in Sacramento and purchased the product there. But Plaintiff brings this action on behalf of nationwide and multi-state classes, and thus, his individual connection to California carries little weight in the transfer analysis. The activities at the crux of this case—including Kenvue's labeling of Tylenol PM as "non-habit-forming"—occurred in the Eastern District of Pennsylvania. Based on identical considerations, another court recently transferred a putative nationwide class action challenging the labeling of Tylenol products from the Southern District of California to the Eastern District of Pennsylvania. *Romoff v. Johnson & Johnson Consumer, Inc.*, No. 22-cv-75-LL-WVG, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022).

Because the heart of this dispute is anchored in the Eastern District of Pennsylvania, transfer is necessary to serve the convenience of the parties and witnesses and to promote the interests of justice.

## BACKGROUND

### A. Plaintiff's Allegations

Plaintiff Sirreon Goodson brings suit on behalf of a putative nationwide class; a multi-state class of purchasers from ten states (seven of which, including New York and New Jersey, are located east of the Mississippi River); and a California class. ECF No. 9, Amended Complaint ("AC") ¶ 56. Plaintiff, a resident of Sacramento, alleges that he purchased Tylenol PM (or the "Product") from retail stores in his hometown. *Id.* ¶¶ 15–16. Plaintiff alleges that he was injured because he relied on the "non-habit forming" statement on the front label, but "developed a habit, contrary to the 'non-habit forming' claims." *Id.* ¶ 16. His causes of action are all premised on the theory that the "non-habit forming" label statement is false and misleading because Tylenol PM's sleep-aid ingredient, diphenhydramine, can "cause habitual use." *Id.* ¶¶ 9–11, 64–122.

### B. Kenvue's Tylenol Teams

Kenvue is a consumer health company that manufactures, markets, and sells Tylenol products, including the Tylenol PM product at issue in this case. Bloom Decl. ¶ 3. Kenvue is an LLC organized in Delaware. *Id.*

Although Kenvue markets its Tylenol products, including Tylenol PM, nationwide, the research and development, marketing, and labeling for these products is conducted primarily at Kenvue's office in Fort Washington, Pennsylvania. *Id.* ¶¶ 4, 5, 10. The Fort Washington office is—and for decades, has been—headquarters for the teams responsible for all aspects of manufacturing and selling Tylenol products, including research and development, quality control, supply chain management, medical affairs, medical safety, product packaging, product marketing (including labeling), consumer and market research, and regulatory/compliance functions. *Id.* ¶ 4.

The primary officers and employees responsible for developing, marketing, and labeling Tylenol products are based in Kenvue's Fort Washington office. *Id.* ¶¶ 4, 6. These include, for

example, leadership and other employees on the research and development, brand/marketing, consumer and market research, regulatory/compliance, medical affairs, and medical safety teams responsible for Tylenol products. *Id.* ¶ 6. The director of regulatory affairs, lead marketer, and director of medical safety for Tylenol products are all located in Fort Washington. *Id.* More than 800 employees, many of whom have responsibilities for Tylenol products, work in the Fort Washington office. *Id.* ¶ 4.

Any other employees involved in the manufacture and marketing of Tylenol products are located in Kenvue's Skillman, New Jersey office, which is a short drive from Fort Washington, Pennsylvania. *Id.* ¶ 7. Kenvue maintains all relevant corporate records in its Fort Washington and Skillman offices, or at a local offsite facility. *Id.* ¶ 8. In short, all of Kenvue's key witnesses and relevant evidence in this case are located in or around Fort Washington, Pennsylvania.

Kenvue has no offices or facilities related to Tylenol products in California or, indeed, anywhere west of the Mississippi. *Id.* ¶ 9. No Kenvue employees or officers responsible for the manufacture or sale of Tylenol products, including the development, marketing, and labeling of such products, are located in California. *Id.*

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer under Section 1404(a) is warranted if (1) the action could have been brought in the district where they are seeking to transfer; and (2) "the convenience of parties and witnesses" and "the interest of justice" favor transfer. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Morgan v. Rohr, Inc.*, No. 19-cv-00800-TLN-KJN, 2020 WL 1451583, at *1 (E.D. Cal. Mar. 25, 2020); *Bowen v. McKesson Corp.*, No. 1:12-cv-1906-LJO-SKO, 2016 WL 1626784, at *2 (E.D. Cal. Apr. 25, 2016). In determining whether the latter element is satisfied, courts analyze a number of factors, some of which partially overlap, including:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5)

familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Baird v. OsteoStrong Franchising, LLC*, No. 20-cv-02010-TLN-DMC, 2022 WL 705883, at *5 (E.D. Cal. Mar. 9, 2022) (citations omitted); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). A decision to transfer lies within the district court's broad discretion. *Jones*, 211 F.3d at 498.

## ARGUMENT

The requisite elements for transfer under Section 1404(a) are met here. Plaintiff could have brought his putative class action in the Eastern District of Pennsylvania, because that is where Kenvue makes and markets Tylenol, and its Tylenol-related officers and employees are headquartered there. And the relevant "convenience" and "interest of justice" factors demonstrate that Pennsylvania is the most appropriate forum for this dispute. This Court should grant Kenvue's transfer request.

### I. This Case Could Have Been Brought in the Eastern District of Pennsylvania

The first element of the Section 1404(a) test is satisfied because this action "might have been brought" in the Eastern District of Pennsylvania. *N.S.B. v. Pascarella*, No. 20-cv-29-KJM-KJN-PS, 2020 WL 3492562, at *2 (E.D. Cal. June 26, 2020). To demonstrate that a case might have been brought in another district, the party seeking transfer must show that "subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Morgan*, 2020 WL 1451583, at *1. Each is true here.

The Eastern District of Pennsylvania has subject matter jurisdiction over this case because, as Plaintiff pleads, the aggregate amount in controversy exceeds $5 million, exclusive of interest, fees, and costs; there are more than 100 class members; and at least one of those class members—Plaintiff, a citizen of California—is a citizen of a state different than Kenvue. *See* AC ¶ 19; 28 U.S.C. § 1332(d)(2), (d)(5) (conferring jurisdiction over putative class actions meeting these

criteria). Further, the Eastern District of Pennsylvania has specific jurisdiction over Kenvue because Kenvue conducts business there and Kenvue's Fort Washington office and operations are located there. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (by "doing business in a forum state," a defendant "invok[es] the benefits and protections of its laws.") (citation and internal quotation marks omitted). Finally, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged events or omissions giving rise to Plaintiff's claims occurred there: Kenvue's drug research and development and labeling discussions related to Tylenol PM would have occurred in its Fort Washington, Pennsylvania office. *See* 28 U.S.C. § 1391(b)(1)–(2); Bloom Decl. ¶¶ 4-5.

## II. The Interests of Convenience and Justice Will Be Served by Transfer

The second element of the Section 1404(a) test is satisfied because the convenience of the parties and witnesses and the interests of justice will be served by transferring this action to the Eastern District of Pennsylvania. As discussed in further detail below, at least five of the seven relevant factors favor transfer here. This case is centered upon Kenvue's research and development, marketing, and labeling regarding Tylenol PM, which primarily occurred in Fort Washington, Pennsylvania, and thus (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the ease of access to evidence all favor transferring this case to Pennsylvania, the state where decisions relating to those subjects are made and implemented. Further, (4) like other states, Pennsylvania has an interest in policing the activities of its resident businesses, and since Kenvue's Fort Washington office is in Pennsylvania, Pennsylvania's interest in the controversy also weighs in favor of transfer. Finally, (5) the relative court congestion of each district strongly favors transfer, as the Eastern District of Pennsylvania is far less congested than the transferor district, the Eastern District of California.

The other two factors—the courts' familiarity with the governing law and the plaintiff's choice of forum—weigh neither for nor against transfer given the nature of this putative class action. As to (6), the courts' familiarity with the governing law, Plaintiff seeks to represent a class of purchasers from all 50 states, and thus either court would be required to perform a choice of law

5

Kenvue's Motion to Transfer Venue [28 U.S.C. § 1404(a)]

analysis to determine whether the laws of those states would apply to putative class members' claims. And for (7), courts give little weight to a plaintiff's chosen forum when that plaintiff seeks to represent classes of individuals located throughout the country. Accordingly, as explained further below, the relevant factors demonstrate that transfer is warranted.

### A. The Convenience of the Parties

The convenience of the parties weighs strongly in favor of transfer. To assess this factor, courts consider "plaintiffs' choice of forum, the parties' contacts with the forum, and the contacts relating to plaintiffs' claims in the chosen forum." *Williams v. WinCo Foods, LLC*, No. 12-cv-02690-KJM-EFB, 2013 WL 211246, at *3 (E.D. Cal. Jan. 10, 2013).

The relative convenience to Plaintiff of litigating in the Eastern District of California is, at best, a neutral factor. Plaintiff resides in Sacramento and purchased Tylenol PM there. AC ¶¶ 15–16. But Plaintiff's residence in California is insignificant because he is litigating this case on behalf of putative nationwide and multi-state classes of purchasers of Tylenol PM. Class members are scattered across the United States, and it is likely that they or their representatives would need to travel comparable distances to litigate in California, were the case not transferred. "Given that potential class plaintiffs will come from all over the country, convenience for Plaintiff is accorded less weight." *Mina v. Red Robin Int'l, Inc.*, No. 18-cv-9472-PSG-GJS, 2020 WL 4037163, at *3 (C.D. Cal. Mar. 3, 2020).

Meanwhile, Kenvue's contacts with California are scant. Kenvue has no offices or facilities related to Tylenol products in California. Further, no Kenvue employees or officers responsible for the manufacture or sale of Tylenol products, including the development, marketing, and labeling of such products, are located there. Bloom Decl. ¶ 9. Litigating and trying this case in California would require Kenvue witnesses and representatives to travel thousands of miles.

Moreover, the Eastern District of Pennsylvania is ground zero for the conduct allegedly giving rise to Plaintiff's claims that Tylenol PM is falsely labeled. Kenvue's research and development, marketing, and labeling of Tylenol PM are at the center of this case. Kenvue's core operations relating to Tylenol products are located in Fort Washington, Pennsylvania, and the

employees who are responsible for those operations work there and in Kenvue's nearby Skillman offices. Bloom Decl. ¶¶ 6–7. The overwhelming majority of key witnesses and documentary evidence in this case is therefore located in and around Kenvue's Fort Washington office. Given the concentration of contacts in Pennsylvania, it is neither practicable nor desirable for either party to litigate in California.

Thus, because "the convenience of this forum to Plaintiff individually is outweighed by its inconvenience to the other parties: the putative class as a whole and Defendant," *Meza v. Procter & Gamble Co.*, No. 23-cv-91-JGB-SHK, 2023 WL 3267861, at *11 (C.D. Cal. Apr. 27, 2023) (citation and internal quotation marks omitted), the convenience of the parties weighs in favor of transfer.

### B. The Convenience of the Witnesses

The convenience of the witnesses similarly weighs in favor of transfer. Plaintiff's claims are based on Kenvue's marketing and labeling of Tylenol PM as "non-habit forming." AC ¶¶ 16. The material witnesses in this case are those closest to those functions: "officers responsible for regulatory, medical, and marketing decisions." *Romoff*, 2022 WL 3905301, at *4 (concluding that presence in Fort Washington of material witnesses responsible for labeling of Tylenol supported transfer to the Eastern District of Pennsylvania). These functions are all based in Kenvue's Fort Washington office—the hub for its Tylenol operations—which is within the Eastern District of Pennsylvania. As the court explained in *Romoff*, Kenvue's Fort Washington office:

> is responsible for . . . all aspects of making and selling Tylenol products, is headquartered in Eastern District of Pennsylvania[,] . . . the vast majority of its workforce are located in that district, and . . . officers and managers responsible for marketing and medical affairs for Tylenol products are located there, including the head of marketing for all Tylenol products and the chief medical officer for the consumer healthcare division.

*Id.* at *4; Bloom Decl. ¶ 6.

Plaintiff's role as a witness will likely be comparatively limited, as his testimony will focus on his purchase and use of Tylenol PM. But "nothing about [the plaintiff's] experience [is] unique to this District," *Meza*, 2023 WL 3267861, at *7, and "given that Plaintiff seeks a nationwide class, he may need similar discovery of putative class members from all over the country, thus mitigating the convenience of California as a forum." *Mina*, 2020 WL 4037163, at *3.

In short, because Kenvue's employees and representatives who are most likely to testify in this case are located in the transferee district, this factor strongly weighs in favor of transfer.

### C. Ease of Access to Evidence

"[T]he location where the events took place, and the resulting ease of access to sources of proof about those events," also favors transfer. *Id.* "[I]n a false advertising action, the heart of the matter lies where the marketing and manufacturing decisions were made, which is typically at Defendant's headquarters." *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (citation omitted). Kenvue's decisions regarding the marketing and labeling of Tylenol PM were made in Kenvue's Fort Washington office or in Kenvue's nearby Skillman offices. *See* Bloom Decl. ¶¶ 6–7. Thus, "most of the non-testimonial evidence in this litigation is likely to be derived from Defendant's corporate records, primarily located in Pennsylvania or New Jersey." *Romoff*, 2022 WL 3905301, at *4. *None* of those records are located in California. Bloom Decl. ¶ 8. As courts have recognized, the "costs of litigation can [] be substantially lessened if the venue is in the district in which most of the documentary evidence is stored." *Mina*, 2020 WL 4037163, at *3 (quoting *Ace Mold (Heifei) Co. Ltd. v. AliphCom*, No. 15-cv-8127-RSWL-E, 2016 WL 8252923, at *3 (C.D. Cal. Oct. 17, 2016)). For these reasons, this factor, too, weighs strongly in favor of transfer.

### D. Local Interest in the Controversy

Pennsylvania's interest in the controversy strongly favors transfer. As the court noted in *Romoff*, Pennsylvania has an "interest in preventing fraudulent practices by resident businesses," 2022 WL 3905301, at *6, and, accordingly, it has a "significant local interest in having a dispute involving a company headquartered in its state decided at home," *Mina*, 2020 WL 4037163, at *4.

8

Kenvue's Motion to Transfer Venue [28 U.S.C. § 1404(a)]

While it is true that California, too, "ha[s] an interest in enforcing its own consumer protection laws," *Jovel v. i-Health, Inc.*, No. 12-cv-05526 DDP-JCG, 2012 WL 5470057, at *6 (C.D. Cal. Nov. 8, 2012), that matters little in this action. As discussed in section F *infra*, because the members of the proposed nationwide and multi-state classes are situated all over the country, every state's laws are implicated to some extent. What matters more is that the conduct at the center of this action occurred in Pennsylvania, and Pennsylvania should be able to police that conduct. *See Mina*, 2020 WL 4037163, at *4 ("[The transferee state] has a more compelling local interest in adjudicating this case than [the transferor state]. This is a case about a company headquartered in [the transferee state] allegedly harming citizens throughout the nation by. . . effect[ing] marketing decisions made in [the transferee state]") (citation omitted).

Indeed, in putative class actions alleging false advertising claims, courts routinely find that the operative facts occurred in the state where the defendant's relevant operations are located, because "decisions regarding product marketing are made in that state." *Rikos v. Procter & Gamble Co.*, No. 10-cv-1974-BEN-CAB, 2011 WL 1456096, at *2 (S.D. Cal. Apr. 13, 2011); *see also Hawkins*, 924 F. Supp. 2d at 1215; *Meza*, 2023 WL 3267861, at *7; *Romoff*, 2022 WL 3905301, at *3–6; *Jovel*, 2012 WL 5470057, at *6. "[T]he crux of the case lies not in [the Plaintiff's] act of purchasing the product in [the transferor state], but instead in the issue of the alleged misrepresentations, which [the Plaintiff] would have perceived in identical form in any state." *Jovel*, 2012 WL 5470057, at *6. Because the operative facts here occurred in Kenvue's Fort Washington office, and Plaintiff could have purchased Tylenol PM labeled as "non-habit forming" anywhere, Pennsylvania's interest in the controversy clearly outweighs California's.

Accordingly, "because the primary focus of this action is the development and marketing of Defendant's products in the Eastern District of Pennsylvania, this factor favors transfer." *Romoff*, 2022 WL 3905301, at *6.

**E. The Relevant Court Congestion of Each District**

The relevant court congestion of each district strongly favors transfer. As the Judicial Conference of the United States has recognized, the Eastern District of California has an

9
Kenvue's Motion to Transfer Venue [28 U.S.C. § 1404(a)]

"extraordinarily high and sustained workload" due to a lack of judicial resources, leading to significant delays in bringing cases to trial. *See Judicial Conference of the United States Transmits Judgeships Request to Congress; Recognizes "Severity of Conditions" in Eastern District of California "Require Immediate Attention,"* https://www.caed.uscourts.gov/caednew/index.cfm/news-archive/judicial-conference-of-the-united-states-transmits-judgeships-request-to-congress/ (last visited Dec. 23, 2024); s*ee also Seymour v. Doe 1*, No. 22-cv-01146 GSA-PC, 2024 WL 1095723, at *1 n. 2 (E.D. Cal. Mar. 13, 2024) (the Eastern District of California's "weighted caseload far exceeds the national average. . . [a] problem [which] is compounded by a shortage of jurists to review its pending matters").

The severity of this congestion is borne out in judicial caseload data. This Court may take notice of Exhibit A to the Kipnees Transfer Declaration, a report posted publicly on the United States Courts' website providing federal court management statistics. *See Romoff*, 2022 WL 3905301, at *6 (taking judicial notice of a similar federal court management statistics report because it is a "matter of public record" with undisputed authenticity) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). This report indicates that as of September 30, 2024, the median time from filing to trial for civil cases was **65.5 months**—nearly five and a half years—in the Eastern District of California. As of that same date, the median time from filing to trial for civil cases was only **26.6 months**—or just over two years—in the Eastern District of Pennsylvania. Put differently, on average, the Eastern District of Pennsylvania can bring *two* civil cases to trial faster than the time it takes the Eastern District of California to bring to trial *one* civil case. Because the Eastern District of Pennsylvania is far less congested than the Eastern District of California, this factor also favors transfer.

### F.  Familiarity With the Governing Law

The courts' familiarity with the governing law does not point for or against transfer. "Federal courts in other states are 'fully capable of applying California law.'" *Meza*, 2023 WL 3267861, at *8 (quoting *LaCross v. Knight Transportation, Inc.*, 95 F. Supp. 3d 1199, 1206 (C.D. Cal. 2015). As the court noted in *Romoff*, "[a]s a federal court sitting in diversity, this Court must

apply California's choice of law rules to determine which law governs Plaintiff's claims, and the same would be true if this action was transferred to the Eastern District of Pennsylvania." 2022 WL 3905301, at *5; *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (instructing that, where there are material differences between California law and the laws of the jurisdictions where other class members reside, the court must apply a three-step analysis to determine which jurisdiction's laws should apply).

Although Plaintiff brings his individual claims under California law, because he brings this case on behalf of nationwide and multi-state classes, both the Eastern District of California and the Eastern District of Pennsylvania would be required to conduct an analysis of how each of the other 49 states' laws (or for the multi-state class, the other nine states' laws) compare to California's. *See Meza*, 2023 WL 3267861, at *8 ("[S]ince Plaintiff asserts [claims] . . . on behalf of the nationwide class, it would likely require the application of the law of 50 states, or at least a robust analysis of the extent to which other state laws are analogous to California law."). Therefore, "even when a plaintiff brings a majority of his claims under California consumer protection laws," and thus a California federal court may be more familiar with the laws of the state than an out-of-state court, "this fact tends to matter[ ] little in a nationwide class action that requires the application of many states' laws." *Id.* (quoting *Prescott v. Bayer HealthCare LLC*, No. 20-cv-00102-NC, 2020 WL 3505717, at *5 (N.D. Cal. June 29, 2020)). Because it is unclear whether and to what extent California law will even apply to the putative classes' claims—and if it does, the Eastern District of Pennsylvania is more than equipped to apply it—this factor is, at best, a wash.

**G. Plaintiff's Choice of Forum**

Finally, Plaintiff's choice of forum—the Eastern District of California—is of minimal importance in this case. "[W]hen an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citations omitted). Plaintiff's putative classes include over 100 other class members who reside all over the nation and have allegedly been injured elsewhere. *See* AC ¶¶ 19, 56. The law is clear that "[w]here plaintiffs' choice of forum is largely fortuitous, such as in class actions, where putative class

members reside in many different states, the plaintiffs' choice of forum is given less weight." *Garcia v. 3M Co.*, No. 09-cv-01943-RMW, 2009 WL 3837243, at *2 (N.D. Cal. Nov. 16, 2009). Thus, because "a district court accords 'minimal consideration' to a plaintiff's choice of forum in representative actions," *Mina*, 2020 WL 4037163, at *4, this factor carries little weight.

### III. District Courts Within This State Have Granted Transfer Motions in Similar Contexts

Granting transfer here is in line with three recent decisions in which other federal district courts in California transferred similar putative nationwide class actions. The factors supporting transfer in those cases apply with equal force here.

In *Romoff*, a California consumer sued Kenvue's predecessor, Johnson & Johnson Consumer Inc. ("JJCI"), in the Southern District of California on behalf of a putative nationwide class, claiming that certain Tylenol products were allegedly falsely labeled as non-drowsy. 2022 WL 3905301, at *1. JJCI moved to transfer the lawsuit to the Eastern District of Pennsylvania, where its Fort Washington headquarters for Tylenol products are located. *Id.* Although the plaintiff resided in California and allegedly bought the product there, the court agreed that transfer to the Eastern District of Pennsylvania was proper, because the facts "at the crux of Plaintiff's claims" — JJCI's decisions "regarding product packaging, labeling, marketing, and regulatory compliance"— took place at the Fort Washington office. *Id.* at *3. The court added that the plaintiff's choice of forum carried little weight because he sought to represent a nationwide class, and thus most of the other proposed plaintiffs sustained alleged injury outside of California. *Id.*

Similarly, in *Meza*, a California consumer sued Proctor & Gamble ("P&G") in the Central District of California on behalf of a putative nationwide class, claiming that P&G allegedly misrepresented that certain DayQuil products as non-drowsy. 2023 WL 3267861, at *1. P&G moved to transfer the case to the Southern District of Ohio, where its headquarters are located. The court granted the motion, holding that "virtually all of the relevant acts or omissions transpired in Ohio, not California: that is where research and development, sales, 'and decisions regarding product packaging, labeling, marketing and regulatory compliance' all took place." *Id.* at *7

(citation omitted). The court also noted that "nothing about [the plaintiff's] experience [is] unique to this District, and the nationwide class on whose behalf she files suit purportedly suffered the exact same harm in seemingly every single district across the nation." *Id.*

Finally, in *Mina,* a California resident brought suit on behalf of a putative nationwide class alleging that Red Robin International ("Red Robin") used an automatic telephone dialing system to send him text messages after he visited one of Red Robin's California restaurants. *Mina*, 2020 WL 4037163, at *1. Red Robin moved to transfer the case to the District of Colorado, where its headquarters are located. *Id.* The court granted Red Robin's motion, holding that transfer was warranted because Red Robin's key witnesses—those who oversaw the implementation of the dialing system—resided in Colorado, and because "convenience for Plaintiff is accorded less weight" where "potential class plaintiffs will come from all over the country." *Id.* at *3.

Thus, in each of these cases, the court transferred venue to the state where the defendant's relevant headquarters were located, holding that the named plaintiff's connection to California mattered little where proposed class members were situated all over the country. This Court should follow suit and transfer this case to the forum where Kenvue's main office for Tylenol operations—and the crux of this dispute—is located: the Eastern District of Pennsylvania.

## CONCLUSION

For the foregoing reasons, Kenvue respectfully requests that this Court transfer this action to the Eastern District of Pennsylvania.

Dated: December 23, 2024                    Respectfully submitted,

*/s/ Steven A. Zalesin*
Steven A. Zalesin *(pro hac vice)*
Joshua Kipnees *(pro hac vice)*
PATTERSON BELKNAP WEBB & TYLER LLP

Malcolm Segal (SBN 075481)
SEGAL & ASSOCIATES, PC

*Attorneys for Defendant*

13
Kenvue's Motion to Transfer Venue [28 U.S.C. § 1404(a)]