**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone:  415-839-7000
E-Mail: yeremey@skclassactions.com
        brittany@skclassactions.com

*Attorneys for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIRREON GOODSON, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>    v.<br><br>KENVUE BRANDS LLC,<br><br>                                        Defendant. | Case No. 2:24-cv-03152-DC-JDP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 21, 2025<br>Time:  1:30 p.m.<br>Courtroom:  8, 13th Floor<br>Judge:  Hon. Dena Coggins |

1

2

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

      A.    DEFENDANT'S PRODUCT IS HABIT-FORMING ............................... 3

      B.    PLAINTIFF'S EXPERIENCE ................................................................ 5

LEGAL STANDARD ................................................................................................. 5

ARGUMENT .............................................................................................................. 6

I.      PLAINTIFF PLAUSIBLY ALLEGES THE "NON-HABIT FORMING"
      CLAIM IS FALSE OR MISLEADING ............................................................. 6

      A.    It Is Premature To Decide Whether A Reasonable Consumer Would
          Be Misled .................................................................................................. 6

      B.    Plaintiff Plausibly Alleges Tylenol PM Is Habit-Forming ........................ 7

II.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED ........................................ 10

III.   IT IS PREMATURE TO DISMISS THE MULTI-STATE CLASS CLAIMS ................... 11

IV.   DISMISSAL WITHOUT LEAVE TO AMEND IS IMPROPER ....................... 13

CONCLUSION ........................................................................................................ 13

1

2

3

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aloudi v. Intramedic Research Grp., LLC*,
   729 F. App'x 514 (9th Cir. 2017) .................................................................... 9

*Alvarez v. NBTY, Inc.*,
   2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) .................................................. 12

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
   465 F.3d 946 (9th Cir. 2006) .................................................................... 3, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 6

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ........................................................................ 11

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) .......................................................................... 6

*BBL, Inc. v. City of Angola*,
   809 F. 3d 317 (7th Cir. 2015) ....................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 6

*Berexa v. Target Corp.*,
   2024 WL 4374140 (E.D. Cal. Oct. 2, 2024) ................................................. 13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .......................................................................... 6

*Davis v. The Kroger Co.*,
   2023 WL 9511156 (C.D. Cal. Sept. 22, 2023) .......................................... 8, 11

*Eckler v. Wal-Mart Stores, Inc.*,
   2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) .................................................. 9

*Epstein v. Wash. Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) .......................................................................... 8

*Finnegan v. Church & Dwight Co.*,
   2018 WL 10345328 (N.D. Cal. Jan. 18, 2018) .............................................. 7

*Forsher v. Boar's Head Provisions Co., Inc.*,
  2018 WL 11436306 (N.D. Cal. Sept. 14, 2018) ............................................. 3, 11

*Franklin v. Midwest Recovery Sys., LLC*,
  2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) ...................................................... 12

*Lemus v. Rite Aid Corp.*,
  613 F. Supp. 3d 1269 (C.D. Cal. 2022) ................................................................. 6

*Linear Technology Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ........................................................................... 1, 6

*Locklin v. StriVectin Operating Co.*,
  2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ..................................................... 2, 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ............................................................................. 5

*Martin v. Omnit Labs Inc.*,
  2023 WL 8190712 (C.D. Cal. Oct. 18, 2023) ....................................................... 9

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ........................................................................... 11

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ............................................................................... 5

*Nishimoto v. Cnty. of San Diego*,
  2017 WL 2709742 (S.D. Cal. June 20, 2017) ...................................................... 8

*Patterson v. RW Direct, Inc.*,
  2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ................................................... 11

*Rice v. Kimberly-Clark Corp.*,
  2022 WL 16804522 (E.D. Cal. Nov. 8, 2022) ...................................................... 7

*Sneed v. Procter & Gamble Co.*,
  2024 WL 5384684 (N.D. Cal. Aug. 19, 2024) ............................................. 2, 9, 10

*Snell v. G4S Secure Solutions (USA) Inc.*,
  424 F. Supp. 3d 892 (E.D. Cal. 2019) ............................................................... 12

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................. 7

*Thompson v. Paul*,
  657 F. Supp. 2d 1113 (D. Az. 2009) .................................................................. 12

*Vasic v. Patent Health, LLC,*
　　2014 WL 940323 (S.D. Cal. Mar. 10, 2014)................................................. 7

*Vicente v. Cakes Body, LLC,*
　　2024 WL 4375773 (N.D. Cal. Oct. 2, 2024)............................................... 10

*Watson v. Crumbl LLC,*
　　2024 WL 3010880 (E.D. Cal. June 10, 2024)............................................. 6

*Williams v. Gerber Prod. Co.,*
　　552 F.3d 934 (9th Cir. 2008).................................................................. 6

**Statutes**

Cal. Bus. & Prof. Code § 17204................................................................. 12

Cal. Civ. Code § 1780(a).......................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................... 5, 12

Fed. R. Civ. P. 15(a)............................................................................ 13

Fed. R. Civ. P. 15(a)(2)......................................................................... 13

1

**INTRODUCTION**

2      Millions of Americans dream of a better night's sleep.  But more than one third of

3  American adults fail to regularly get enough sleep.  First Amended Complaint ("FAC") ¶ 1.  As a

4  result, consumers desire products that will help them sleep and that "will not cause habitual use."

5  *Id.* ¶ 12.  Defendant Kenvue Brands LLC ("Defendant") offers a solution to this problem in the

6  form of Tylenol PM.  Defendant prominently labels its Tylenol PM products as "non-habit

7  forming" to induce unknowing consumers into purchasing its sleep-aid products:

8

9

10

11

12                          

13

14

15

16

17  FAC ¶ 22.  The "non-habit forming" claim is located only on the front panel of the packaging.  *See*

18  *id; see also* Declaration of Joshua Kipnees ("Kipnees Decl."), Ex. A (packaging exemplar).

19  Reasonable consumers, like Plaintiff, believe Tylenol PM is "non-habit forming" and therefore will

20  not cause habitual use.  *Id.* ¶ 39.  But, unbeknownst to consumers, Tylenol PM's active ingredient,

21  diphenhydramine HCl is "habit-forming."

22      Defendant now offers several arguments that purportedly justify dismissal of Plaintiff's

23  claims.  Each of these arguments is incorrect.

24      First, Defendant contends "Plaintiff's definition of" non-habit forming "on Tylenol PM's

25  label is unreasonable as a matter of law."  MTD at 12.  Not so.  "Whether a practice is deceptive,

26  fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of

27  evidence from both sides' and which usually cannot be made on [a motion to dismiss.]"  *Linear*

28

1    *Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007).  But even so,

2    Plaintiff's interpretation of the "non-habit forming" claim is not unreasonable.  Defendant argues

3    "the only reasonable interpretation of 'habit-forming' is causing or likely to cause addiction or

4    abuse."  MTD at 14.  But Plaintiff's allegations that the "'non-habit forming" claim means that

5    Tylenol PM "does not and cannot cause habitual use" are consistent with Defendant's proposed

6    interpretation.  FAC ¶ 39; *see infra* § I(A).

7           Second, Defendant argues Plaintiff fails to "plead facts 'affirmatively disproving'" the

8    "non-habit forming" claim and that "[n]one of Plaintiff's allegations plausibly establish that

9    Tylenol PM or diphenhydramine, when used as directed, causes or is likely to cause addiction or

10   abuse."  MTD at 14-15.  However, "[a]t the motion to dismiss stage, complaints need not 'show' or

11   'establish' anything . . . Whether the studies cited in the complaint definitively prove [Plaintiff's]

12   claims is not a dispute susceptible to resolution on a motion to dismiss."  *Locklin v. StriVectin*

13   *Operating Co.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022).  And, the directions on the back

14   panel of the packaging do nothing to foreclose Plaintiff's claims.  *Sneed v. Procter & Gamble Co.*,

15   2024 WL 5384684 at *7 (N.D. Cal. Aug. 19, 2024) ("directions on the back to stop using the

16   product after two weeks are of no value if a consumer has become addicted to the product.")].

17          Third, Defendant asserts "to the extent that Plaintiff alleges that Tylenol PM's label falsely

18   communicates that the product or its diphenhydramine ingredient is safe, that claim is squarely

19   preempted by federal law."  MTD at 19.  This argument is irrelevant.  Defendant does not state on

20   the label that Tylenol PM is "safe" and Plaintiff does not allege Tylenol PM is falsely marketed as

21   "safe."  Rather, as set forth above and further herein, Plaintiff alleges Defendant prominently labels

22   its Tylenol PM products as "non-habit forming," and the "non-habit forming" claim is false and

23   misleading.  FAC ¶ 22.

24          Fourth, Defendant contends that claims on behalf of the multi-state classes should be

25   dismissed because such class members have "no statutory standing to bring claims under the UCL

26   and CLRA."  MTD at 20-21.  That is wrong.  Where, as here, "the named plaintiff has individual

27   standing to bring a claim, the standing inquiry is concluded. . . . Further inquiry into whether the

28   named plaintiff may represent the interests of other class members is deferred to the class

1   certification decision." *Forsher v. Boar's Head Provisions Co., Inc.*, 2018 WL 11436306, at *7

2   (N.D. Cal. Sept. 14, 2018).

3       Fifth, Defendant asserts the FAC "should be dismissed with prejudice" because the

4   purported "defect[s] cannot be cured by amendment, rendering leave to amend futile." MTD at 21.

5   However, "Rule 15(a) is very liberal and leave to amend shall be freely given when justice so

6   requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)

7   (citation and quotation omitted). Here, should the Court find Plaintiff's allegations deficient,

8   Plaintiff can amend to add additional scientific literature or other facts, as needed, to support his

9   claim. As such, the amendment would not be futile.

10       Accordingly, the Court should deny Defendant's motion.

11   ## FACTUAL BACKGROUND

12   ## A.    DEFENDANT'S PRODUCT IS HABIT-FORMING

13       "The first antihistamine containing diphenhydramine, Benadryl, burst onto the market in

14   1946[.]" FAC ¶ 4. "It was marketed for allergy relief, but users quickly identified its sedating

15   effects." *Id.* "Diphenhydramine is a first-generation antihistamine frequently used, among other

16   uses, to treat insomnia. The sedative effect is related to its easy penetration of the blood-brain

17   barrier. In the brain, diphenhydramine interferes with H1 receptors, causing drowsiness and

18   sedation." *Id.* ¶ 6. "Because the chemical floods the brain in large quantities, users can quickly

19   develop a tolerance. Tolerance can develop in as little as 1–2 weeks, requiring users to take larger

20   and larger doses for the same sedating effect, and causing dependency in users who find they need

21   diphenhydramine to fall asleep. The result is habitual use." *Id.* ¶ 7. Further, "[d]iphenhydramine

22   elicits a cocaine-like pattern of stimulation of dopamine transmission that can lead to misuse of

23   medications containing" it. *Id.* ¶ 9. "In short, users can become dependent on diphenhydramine if

24   they take it continuously for a period of time and continuous use may cause it to stop working as

25   well." *Id.* ¶ 10.

26       "Habitual use of diphenhydramine is both psychological and physical." *Id.* ¶ 33.

27   "Diphenhydramine works by acting on certain receptors in the brain, causing sedation. Because of

28   this, individuals can quickly develop a tolerance, requiring larger and larger doses for the same

sedating effect, and finding that they are dependent on it to fall asleep." *Id.* ¶ 34. "There is a substantial body of research that, individually and in the aggregate, demonstrates that diphenhydramine is habit-forming, or alternatively, is more likely than not to be habit-forming." *Id.* ¶ 35. Examples of this literature include:

- Schifano S, et al: Focus on Over-the-Counter Drugs' Misuse: A Systematic Review on Antihistamines, Cough Medicines, and Decongestants. Front Psychiatry, May 2021.

- Jagroop S, et al: Chronic Diphenhydramine Abuse and Withdrawal: A Diagnostic Challenge. Neurol Clin Pract, Oct 2017.

- Erbe S, Bschor T: [Diphenhydramine Addiction and Detoxification. A Systematic Review and Case Report] Article in German. Psychiatr Prax, July 2013.

- Gracious B, et al: The Importance of Taking a History of Over-the-Counter Medication Use: a Brief Review and Case Illustration of "PRN" Antihistamine Dependence in a Hospitalized Adolescent. J Child Adolesc Psychopharmacol, Dec 2010.

- Bonham C, Birkmayer F: Severe Diphenhydramine Dependence and Withdrawal: Case Report. Journal of Dual Diagnosis, Vol 5, p 97-103, 2009.

- Thomas A, et al: Diphenhydramine Abuse and Detoxification: a Brief Review and Case Report. J Psychopharmacol, Jan 2009.

- Herman DM, Bassetti CL: Reversible Opsoclonus after Diphenhydramine Misuse. Eur Neurol 53(1):46-47, 2005.

- Richardson G, et al: Tolerance to Daytime Sedative Effects of H1 Antihistamines. J Clin Psychopharmacol, Oct 2002.

- Cox D et al: Diphenhydramine Dependence. Addiction, March 2001, p 516-517.

- Roberts K, et al: Misuse of Diphenhydramine Soft Gel Capsules (Sleepia): a Cautionary Tale from Glasgow. Addiction, Oct 1999.

- Dinndorf P, et al: Risk of Abuse of Diphenhydramine in Children and Adolescents with Chronic Illnesses. J Pediatr, Aug 1998.

- De Nesnera AP: Diphenhydramine Dependence: a Need for Awareness. J Clin Psychiatry, March 1996.

- Feldman MD, Behar M: A Case of Massive Diphenhydramine Abuse and Withdrawal from Use of the Drug. JAMA, June 1986.

FAC ¶ 35.

This is a non-exhaustive list of the literature available on this subject matter. Each of these studies points to the same conclusion: Diphenhydramine is habit-forming. For example, *Tolerance to Daytime Sedative Effects of H1 Antihistamines* confirms that diphenhydramine is habit-forming with regular use. Similarly, *Risk of Abuse of Diphenhydramine in Children and Adolescents with Chronic Illnesses* demonstrates that diphenhydramine users quickly build tolerance to the ingredient, leading to increased intake and difficulty quitting. *Severe Diphenhydramine Dependence and Withdrawal: Case Report* confirms that frequent diphenhydramine users struggle to stop without withdrawal symptoms.

## B.    PLAINTIFF'S EXPERIENCE

Plaintiff Sirreon Goodson is a California citizen, residing in Sacramento, California. FAC ¶ 15. In or around November 2023, Plaintiff purchased [Tylenol PM] from a Walmart and Walgreens in Sacramento, California for his personal use." *Id.* ¶ 16. "Prior to his purchases, Plaintiff reviewed the accompanying labels and disclosures, including Defendant's representation that" Tylenol PM "was 'non-habit forming.' Plaintiff understood the claims as warranties that [Tylenol PM] would provide the advertised benefits, relief, and support without causing habitual use[.]" *Id.* However, when Plaintiff took the Tylenol "as directed by Defendant, he developed a habit, contrary to the "non-habit forming" claims." *Id.* As a result, Plaintiff did not receive the benefit of his bargain." *Id.*

## LEGAL STANDARD

12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir.

1  2008) (internal quotation marks and citations omitted).  Dismissal is proper if there is a "lack of a

2  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

3  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

4    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

5  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

6  662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court

7  "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light

8  most favorable to the non-moving party."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

9  (9th Cir. 2010) (citation omitted).

10                                **ARGUMENT**

11  **I.    PLAINTIFF PLAUSIBLY ALLEGES THE "NON-HABIT FORMING" CLAIM IS
12         FALSE OR MISLEADING**

13       **A.    It Is Premature To Decide Whether A Reasonable Consumer
                 Would Be Misled**

14    Defendant argues dismissal is appropriate because "Plaintiff's definition of" non-habit

15  forming "on Tylenol PM's label is unreasonable as a matter of law."  MTD at 12.  This is

16  premature and incorrect.

17    At the motion to dismiss stage, whether a reasonable consumer would be misled by an

18  advertisement is a question of fact and not law.  *Linear Technology Corp.*, 152 Cal. App. 4th at

19  134-35 ("[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact

20  which requires 'consideration and weighing of evidence from both sides' and which usually cannot

21  be made on [a motion to dismiss]'") (cleaned up); *see also Williams v. Gerber Prod. Co.*, 552 F.3d

22  934, 938–39 (9th Cir. 2008).  As such, it is only in "*rare* situations a court may determine, as a

23  matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible."

24  *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1280 (C.D. Cal. 2022)(emphasis in original);

25  *Watson v. Crumbl LLC*, 2024 WL 3010880, at *6 (E.D. Cal. June 10, 2024) ("Courts rarely grant a

26  motion to dismiss for failure to satisfy this test in the initial pleadings "[b]ecause what a reasonable

27  person would believe is generally a question of fact.").  Instead, at the pleadings "stage, the court's

28

focus is on the plausibility of the legal theories." *Rice v. Kimberly-Clark Corp.*, 2022 WL 16804522, at *4 (E.D. Cal. Nov. 8, 2022).

Defendant's argument rests on the theory that "the only reasonable interpretation of 'habit-forming' is causing or likely to cause addiction or abuse[,]" and not "'something you [may] do often and regularly'— such as making one's bed or biting one's nails—or as a promise that the product will not induce 'involuntary,' 'motorically reflexive' behavior." MTD at 13-14. But Plaintiff's allegations that "reasonable consumers interpret the 'non-habit forming' claim to mean that the Product does not and cannot cause habitual use" are consistent[1] with Defendant's proposed interpretation. FAC ¶ 39. Indeed, a synonym for the terms "habit" and "habit-forming" is "addiction."[2] As such, Defendant's argument that Plaintiff's definition is unreasonable as a matter of law is simply not credible.

### B.    Plaintiff Plausibly Alleges Tylenol PM Is Habit-Forming

Defendant further asserts that Plaintiff fails to "plead facts 'affirmatively disproving'" the "non-habit forming" claim and that "[n]one of Plaintiff's allegations plausibly establish that Tylenol PM or diphenhydramine, when used as directed, causes or is likely to cause addiction or abuse." MTD at 14-15. These arguments are incorrect.

"[A]t the motion to dismiss stage, complaints need not 'show' or 'establish' anything … Whether the studies cited in the complaint definitively prove [Plaintiff's] claims is not a dispute susceptible to resolution on a motion to dismiss." *Locklin*, 2022 WL 867248, at *4; *Finnegan v. Church & Dwight Co.*, 2018 WL 10345328, at *2 (N.D. Cal. Jan. 18, 2018)("Nothing in *SanMedica*, however, even remotely suggests that a plaintiff in a false advertising action must support his or her claims with irrefutable scientific evidence in order to survive a motion to dismiss."); *Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014)

---

[1] Even if the definitions were inconsistent, this would not justify dismissal. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).").

[2] Merriam-Webster Thesaurus, "Habit," https://www.merriam-webster.com/thesaurus/habit; Meriam-Webster Thesaurus, "Habit-Forming," https://www.merriam-webster.com/thesaurus/habit-forming.

1    (whether studies in fact prove falsity is a fact question inappropriate for resolution on a motion to

2    dismiss); *Nishimoto v. Cnty. of San Diego*, 2017 WL 2709742, at *5 (S.D. Cal. June 20, 2017); *see*

3    *also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (plaintiffs need only present

4    plausible, fact-supported allegations at this stage).  Moreover, "[a]ttacks on the quality of a

5    plaintiff's studies go [to] the weight of the evidence, and are therefore properly reserved for

6    summary judgment or trial, rather than a motion to dismiss."  *Davis v. The Kroger Co.*, 2023 WL

7    9511156, at *8 (C.D. Cal. Sept. 22, 2023).

8        Here, Plaintiff plausibly alleges Tylenol PM is habit-forming.  Plaintiff alleges that

9    "[a]lthough the Product is marketed as 'non-habit forming,' the Product's primary active

10   ingredient, diphenhydramine, can cause habitual use."  FAC ¶ 32.  "Habitual use of

11   diphenhydramine is both psychological and physical."  *Id.* ¶ 33.  In fact, "individuals can quickly

12   develop a tolerance, requiring larger and larger doses for the same sedating effect, and finding that

13   they are dependent on it to fall asleep."  *Id.* ¶ 34.  Plaintiff cites to 13 studies that demonstrate

14   diphenhydramine can cause habitual use.  *Id.* ¶ 35.  For example, *Tolerance to Daytime Sedative*

15   *Effects of H1 Antihistamines* confirms that diphenhydramine is habit-forming with regular use.

16   Similarly, *Risk of Abuse of Diphenhydramine in Children and Adolescents with Chronic Illnesses*

17   demonstrates that diphenhydramine users quickly build tolerance to the ingredient, leading to

18   increased intake and difficulty quitting.  *Severe Diphenhydramine Dependence and Withdrawal:*

19   *Case Report* confirms that frequent diphenhydramine users struggle to stop without withdrawal

20   symptoms.

21        Moreover, Plaintiff alleges that he understood the non-habit forming claim to mean the

22   "Product would provide the advertised benefits, relief, and support without causing habitual use[.]"

23   *Id.* ¶ 16.  But "when Plaintiff took the Product as directed by Defendant, he developed a habit,

24   contrary to the 'non-habit forming' claims."  *Id.*  All of these allegations point to a single

25   conclusion: that Tylenol PM is habit-forming.  Here, Plaintiff specifically identifies

26   diphenhydramine as the source of the "habit," that he personally formed a habit when using the

27   product as directed, and that scientific studies demonstrate diphenhydramine is habit-forming.

28

These allegations, together with the scientific literature, amount to more than mere anecdotal evidence and are more than sufficient to allege the products are "habit-forming."

Defendant's cases are distinguishable.  In *Sneed*, the plaintiff alleged the claim that zzzQuil was "non-habit forming" was false and misleading.  *Sneed*, 2024 WL 5384684 at *1.  However, the plaintiff only cited "articles concerning the rise of sleep-aids, what defines a 'habit,' and how habits are formed."  *Id.* at *7.  In fact, only one source discussed whether the products were habit-forming at all, and even then, only referenced a single consumer.  *Id.*  That source also did "not include any citations to clinical studies concerning diphenhydramine and habit formation."  *Id.* at In contrast, Plaintiff cites to 13 studies that focus on the addictive nature of diphenhydramine and its potential for abuse and dependence.  FAC ¶ 35.

The other cases Defendant cites suffer from similar deficiencies.  In *Aloudi*, the complaint cited only a "mouse study" that did not involve a "product with the same active ingredients."  *Aloudi v. Intramedic Research Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017).  Here, each of Plaintiff's studies discuss the same active ingredient – diphenhydramine.  In *Eckler*, the plaintiff alleged that she purchased a dietary supplement marketed as being "good for the health and comfort of joints" that did not "deliver the benefits it promised."  *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *1 (S.D. Cal. Nov. 1, 2012).  The court found that the plaintiff's studies were not actually on point because the cited studies asserted that the supplement did not alleviate symptoms of osteoarthritis.  *Id.* at *7.  The studies did not support the broader assertion that the supplement did "nothing for the body's joints at all."  *Id.*  Similarly, in *Martin*, the studies relied on by the plaintiff did not analyze participants' memory, focus, or cognitive processing speed, which was the representation at issue.  *Martin v. Omnit Labs Inc.*, 2023 WL 8190712, at *5 (C.D. Cal. Oct. 18, 2023).  In contrast to these cases, Plaintiff cites a non-exhaustive list of studies that discuss the addictive nature of diphenhydramine and its potential for abuse and dependence.  FAC ¶ 35. As such, the studies are directly on point.

*Genexa Inc.* is also inapt.  *Genexa Inc. v. KinderFarms LLC*, No. 22-CV-9291 (ECF No. 29) (C.D. Cal. Apr. 14, 2023).  In *Genexa*, the Plaintiff alleged the claim "Non-Toxic" on a pain and fever relief product was false and misleading because the products were not non-toxic.  *Id.* at 4.

There, the labeling claim was placed immediately above the drug facts panel on the ***back*** of the box. *Id.* at 17. The "Non-Toxic" claim was ***not*** made on the ***front*** panel of the product. *Id.* at 22. Here, the "non-habit forming" claim is on the front of package without any qualifying language. FAC ¶ 22. Nor is the statement located anywhere else on the packaging. *See e.g.* Kipnees Decl., Ex. A.

Moreover, Defendant's contention that Plaintiff does not allege Tylenol PM is "non-habit forming" when used as directed is a red herring. The directions on the back panel of the packaging do not foreclose Plaintiff's claims, as Plaintiff alleges that consumers are unable to follow those directions *because* Tylenol PM is habit forming. *Sneed*, 2024 WL 5384684 at *7 ("directions on the back to stop using the product after two weeks are of no value if a consumer has become addicted to the product."). But setting that aside, the packaging does not state that it is "non-habit forming when used as directed." Nor does it include an asterisk or disclaimer making the same statement. Rather the packaging states Tylenol PM is "non-habit forming" on the front without any further qualification. FAC ¶ 22. Even if the product ***did*** have such a disclaimer elsewhere on the packaging, it would not preclude plaintiff's claims. *Vicente v. Cakes Body, LLC*, 2024 WL 4375773, at *1 (N.D. Cal. Oct. 2, 2024) ("Nor do [Defendant's] purported instructions . . . defeat [Plaintiff's] fraud claims . . . . Reasonable consumers are not expected to look beyond misleading representations "on the front of the box" to learn the truth from disclaimers in fine print.").

## II. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

Defendant asserts that "to the extent that Plaintiff alleges that Tylenol PM's label falsely communicates that the product or its diphenhydramine ingredient is safe, that claim is squarely preempted by federal law." MTD at 19. This misconstrues Plaintiff's claims.

Plaintiff alleges that Defendant misrepresents that Tylenol PM is "non-habit forming." FAC ¶ 22. Plaintiff ***does not*** allege that the product packaging represents Tylenol PM is "safe." Defendant does not argue that Plaintiff's "non-habit forming" claims are preempted. Nor can it. *Sneed*, 2024 WL 5384684 at *5 ("Plaintiffs' claims [that product is falsely advertised as non-habit forming] would not impose requirements on manufacturers that are additional to or different from what the FDA requires," and are therefore "not preempted. If anything, Plaintiffs' claims 'go

beyond the FDA-approved labeling and advertising.'"); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) (finding no preemption where the FDA had not issued regulations regarding the term "natural" and Plaintiff claimed the term was misleading); *Davis v. The Kroger Co.*, 2023 WL 9511156, at *7 (C.D. Cal. Sept. 22, 2023) (rejecting Defendant's argument that claims were explicitly authorized and therefore preempted).  Accordingly, this argument does not support dismissal because it is irrelevant to Plaintiff's claim that the products are "non-habit forming."

### III.  IT IS PREMATURE TO DISMISS THE MULTI-STATE CLASS CLAIMS

Defendant contends that claims on behalf of the multi-state class should be dismissed because such class members have "no statutory standing to bring claims under the UCL and CLRA."  MTD at 20-21.  This argument is premature and incorrect.

Defendant's argument "conflates standing and class certification."  *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) ("Standing is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate.  Class certification, on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class.").  The Ninth Circuit has adopted the "class certification approach," where "any issues regarding the relationship between the class representatives and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing."  *Id*.  Thus, "if the named plaintiff has individual standing to bring a claim, the standing inquiry is concluded. … Further inquiry into whether the named plaintiff may represent the interests of other class members is deferred to the class certification decision."  *Forsher*, 2018 WL 11436306, at *7; *Patterson v. RW Direct, Inc.*, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018) ("whether a named plaintiff can represent class members whose claims arise under the laws of different states does not appear to be a question of standing [because] Patterson does not himself seek to raise a claim under the laws of a different state; rather, he seeks to represent a class member who can raise such a claim.").

Here, Plaintiff plainly has standing to pursue his claims.  A plaintiff has statutory standing to assert a claim under the CLRA if he or she "suffers any damages as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the CLRA]."

Cal. Civ. Code § 1780(a).  A plaintiff has statutory standing to assert a claim under the UCL if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

Here, Plaintiff is a California citizen, residing in Sacramento, California.  FAC ¶ 15.  In or around November 2023, Plaintiff purchased [Tylenol PM] from a Walmart and Walgreens in Sacramento, California for his personal use."  *Id.* ¶ 16.  "Prior to his purchases, Plaintiff reviewed the accompanying labels and disclosures, including Defendant's representation that" Tylenol PM "was 'non-habit forming.'  Plaintiff understood the claims as warranties that [Tylenol PM] would provide the advertised benefits, relief, and support without causing habitual use[.]"  *Id*.  However, when Plaintiff took the Tylenol "as directed by Defendant, he developed a habit, contrary to the "non-habit forming" claims."  *Id.*  As a result, Plaintiff did not receive the benefit of his bargain."  *Id*.  These allegations are more than sufficient to demonstrate that Plaintiff has standing to pursue his CLRA and UCL claims.  Accordingly, because Plaintiff has standing, dismissal of the multi-state class claims is not appropriate at this stage.  *See, e.g.*, *Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017) ("this secondary standing analysis relating to Plaintiff's] standing as it relates to multi-state class is best left for class certification and after further discovery.").

Moreover, Defendant's argument is improper.  Essentially, Defendant asks the Court to partially dismiss Plaintiff's claims.  MTD at 20-21.  However, the "Federal Rule of Civil Procedure 12(b)(6) does not provide a mechanism for dismissing only a portion of a claim."  *Franklin v. Midwest Recovery Sys., LLC*, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (collecting authorities); *BBL, Inc. v. City of Angola*, 809 F. 3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims. . . .") (emphasis in original).  While a defendant can seek partial dismissal of a complaint by seeking dismissal of one or more claims in the complaint, there is no situation ''in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged.'"  *Snell v. G4S Secure Solutions (USA) Inc.*, 424 F. Supp. 3d 892, 904 (E.D. Cal. 2019) (quoting *Thompson v. Paul,* 657 F. Supp. 2d 1113, 1129 (D. Az. 2009)).  Where, as here, Plaintiff

1   has standing for his individual claim – and Defendant does not dispute this – Defendant's argument

2   is improper.

3   **IV.  DISMISSAL WITHOUT LEAVE TO AMEND IS IMPROPER**

4           Defendant asserts the FAC "should be dismissed with prejudice" because the purported

5   "defect[s] cannot be cured by amendment, rendering leave to amend futile."  MTD at 21.  That is

6   wrong.  Rule 15(a) provides that a court "should freely give leave [to amend] when justice so

7   requires."  Fed. R. Civ. P. 15(a)(2).  Moreover, "Rule 15(a) is very liberal and leave to amend shall

8   be freely given when justice so requires."  *AmerisourceBergen Corp.*, 465 F.3d at 951 (citation and

9   quotation omitted).  While it is true that "leave to amend need not be granted where amendment is

10  'futile,'" that is not the case here.  *Berexa v. Target Corp.*, 2024 WL 4374140, at *4 (E.D. Cal. Oct.

11  2, 2024).  Amendment is only futile "when no set of facts can be proved under the amendment to

12  the pleadings that would constitute a valid and sufficient claim."  *Id.*  Plaintiff believes his

13  allegations are sufficient to state a claim.  However, should the Court find to the contrary, Plaintiff

14  can provide additional allegations regarding the falsity of the "non-habit forming" claim.

15                                   **CONCLUSION**

16          For the foregoing reasons, the Court should deny Defendant's motion to dismiss.  However,

17  if the Court grants Defendant's motion in any respect, the Court should give Plaintiff leave to

18  amend for the reasons set forth above.  *Supra* Section IV.

19

20  Dated: February 10, 2025            **SMITH KRIVOSHEY, PC**

21                                      By: _____*/s/ Brittany S. Scott*_____
                                            Brittany S. Scott

22

23                                      **SMITH KRIVOSHEY, PC**
                                        Yeremey O. Krivoshey (State Bar No. 295032)
24                                      Brittany S. Scott (State Bar No. 327132)
                                        166 Geary Street, Ste. 1500-1507
25                                      San Francisco, CA 94108
                                        Phone:  415-839-7000
26                                      E-Mail: yeremey@skclassactions.com
                                             brittany@skclassactions.com

27

28

1

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)

2
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116

3
Phone:  617-377-7404
E-Mail: joel@skclassactions.com

4

5
**BURSOR & FISHER, P.A**.
L. Timothy Fisher (State Bar No. 191626)

6
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596

7
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

8
E-mail: ltfisher@bursor.com

9

10
*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28