Case 2:24-cv-03152-DC-JDP     Document 34-1     Filed 04/14/25     Page 1 of 15

**EXHIBIT 1**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN SNEED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Case No. 23-cv-05443-JST<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 52 |

Before the Court is Defendant Procter & Gamble Company's ("P&G") motion to dismiss the second amended complaint. ECF No. 52. The Court will deny the motion.

## I.   BACKGROUND

Because the facts are well-known to the parties and the Court has summarized the background of this action in detail in its prior order, ECF No. 45, the Court will not elaborate them in their entirety here. In sum, P&G sells several "Nighttime Sleep Aid" products (hereinafter, "Product(s)") containing diphenhydramine hydrochloride ("diphenhydramine") under the ZzzQuil brand. ECF No. 47 ¶ 2, 4, 12 ("SAC"). Plaintiffs Stephen Sneed and Nickolas Cannon bring this putative class action against P&G for allegedly "falsely and misleadingly advertis[ing], label[ing], and packag[ing] certain" of its ZzzQuil Nighttime Sleep Aid products as "Non-Habit Forming" (hereinafter, "Habit Representation" and/or "Challenged Representation"). *Id.* ¶ 2. Plaintiffs allege that the Products contain diphenhydramine, which "is an ingredient that can lead consumers to frequently use the Product over a prolonged period, contrary to the Challenged Representation disclaiming the Products' potential to be 'habit forming.'" *Id.* ¶ 3. Plaintiffs further contend that such representations coax "reasonable consumers, including Plaintiffs, to incorrectly believe that the Products do not and cannot cause habitual use." *Id.* ¶ 2.

Plaintiffs bring claims for (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500 *et seq.*; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (4) breach of warranty in violation of Cal. Comm. Code §§ 2313 *et seq.*; and (5) unjust enrichment under California law. *Id.* at 32-49.

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.   JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

"As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.

2

2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "When 'matters outside the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56," unless those matters satisfy the "incorporation-by-reference doctrine" or the standard for "judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting Fed. R. Civ. P. 12(d)). The Ninth Circuit has expressed concern with the practice of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* The Ninth Circuit also cautioned that "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)). "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity . . . is not contested," *Lee*, 250 F.3d at 688 (alteration in original) (quotation marks and citation omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Defendants request that the Court consider twenty documents under the incorporation-by-reference doctrine or take judicial notice of those documents: (1) a letter sent by the Food and Drug Administration ("FDA") to the Halsey Drug Company, Inc., dated June 5, 1986, approving the abbreviated new drug application ("ANDA") for Beldin Cough Syrup, ECF No. 53-2 (Exhibit 1); (2) a letter sent by the FDA to Richardson-Vicks, Inc., dated February 19, 1987, approving the ANDA for Vicks Formula 44 Cough Mixture, ECF No. 53-4 (Exhibit 2); (3) a July 31, 2007,

3

1  report titled *Side Effects of Sleep Drugs*, published by the FDA on its website, ECF No. 53-5

2  (Exhibit 3); and (4) seventeen sources cited by Plaintiffs in the SAC, comprised mostly of

3  scientific articles, ECF Nos. 53-6–53-22 (Exhibits 4–20).

### A.     FDA Documents (Exhibits 1–3)

P&G argues that the Court may take judicial notice of the three FDA documents because they are "government documents," including public information on a government agency website. ECF No. 53 at 2.  Plaintiffs argue that the Court should deny P&G's request because (1) the three FDA documents constitute improper extrinsic evidence outside the scope of Plaintiffs' SAC; (2) the three FDA documents are reasonably subject to dispute and not capable of immediate and accurate determination; (3) the two FDA letters are not publicly available documents; (4) P&G improperly seeks to use the FDA documents to ask the Court to resolve factual issues in a motion to dismiss; and (5) the three FDA documents constitute inadmissible hearsay.  ECF No. 59 at 3–7.

While Plaintiffs argue that the FDA documents are "'subject to reasonable dispute' and cannot be deemed 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned,'" they merely quote the language from Rule 201 without explaining *how* those documents are "subject to reasonable dispute" or raising any actual attack on the documents' authenticity.  ECF No. 59 at 4.  Plaintiffs also argue that the Court should not take judicial notice of Exhibits 1 and 2 because they are not publicly accessible—Exhibit 1 was retrieved from P&G's files (P&G had acquired Richardson-Vicks, Inc. in 1985) and Exhibit 2 was obtained from the website of FOI Services, Inc., which represented that it obtained the document from the FDA through the Freedom of Information Act.  ECF No. 59 at 5.  But the two cases cited by Plaintiffs, *see id.*, both involved challenges to the authenticity of the documents.  *See Townsend v. Wells Fargo Bank, N.A.*, No. 18-CV-07382-NC, 2019 WL 4145464, at *2 (N.D. Cal. Aug. 30, 2019), *aff'd*, 831 F. App'x 338 (9th Cir. 2020) ("The Court declines to take judicial notice of the loan modification agreement.  Townsend disputes the authenticity of that document and contends that it is not publicly available."); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 937 (C.D. Cal. 2012) ("Plaintiffs dispute the authenticity of SCHC and SYCI's SAIC documents obtained by Gulf.  The Court notes these SAIC documents were not publicly available because

4

1  authorization of a Gulf company representative was required for access.").

2  Here, Plaintiffs do not dispute that the FDA in fact approved for market the two products
3  and their corresponding labels described in Exhibits 1 and 2. And the approval of these two
4  products is readily verifiable on the FDA's website such that they are fit for judicial notice. *See*
5  *Wilson v. Amneal Pharms., L.L.C.*, No. 1:13-CV-00333-CWD, 2013 WL 6909930, at *6 (D. Idaho
6  Dec. 31, 2013).

7  Because Courts routinely take judicial notice of similar FDA guidance documents, the
8  Court grants P&G's requests for judicial notice of the FDA documents. *See, e.g.*, *Gustavson v.*
9  *Wrigley Sales Co.*, 961 F.Supp.2d 1100, 1126, n.1 (N.D. Cal. 2013) (taking judicial notice of an
10 FDA guidance document about food labeling and an FDA response letter); *see also Wilson v.*
11 *Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017) (taking judicial notice of a
12 letter from a public interest group to the FDA, FDA food labeling guidance, and warning letters
13 sent from the FDA to other companies); *Kettner v. Cadista Holdings, Inc.*, No.
14 219CV02123TLPCGC, 2019 WL 11583314, at *2 (W.D. Tenn. Aug. 12, 2019) (taking judicial
15 notice of FDA documents approving an ANDA).

16 However, the Court agrees with Plaintiffs that judicial notice extends only to recognizing
17 the *existence* of Exhibits 1–3, and not truth of the conclusions contained within them. *See* ECF
18 No. 59 at 4 (citing *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal.
19 2015)). Accordingly, the Court takes judicial notice of Exhibits 1 and 2 to indicate that the FDA
20 granted approval of the products therein and their corresponding product labels, "not whether the
21 contents of [the letter or the labels] were in fact true," i.e., whether the use of diphenhydramine at
22 the respective doses of those products is in fact non-habit forming. *Von Saher v. Norton Simon*
23 *Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation marks omitted);
24 *Wilson*, 2013 WL 6909930, at *7 (taking judicial notice of "when certain approvals occurred, and
25 what was being approved——whether it was the transfer of the ANDA for Generic Bactrim, or the
26 labels for Brand Name Bactrim and what those labels stated"—and not "the entirety of the
27 [approval] letters' contents"). The Court similarly takes judicial notice of Exhibit 3 to indicate
28 that the FDA has published the information therein on its website—not that the contents of that

5

webpage are in fact true.

### B. Scientific Sources Incorporated by Reference (Exhibits 4–20)

P&G argues that the scientific sources contained in Exhibits 4–20 have been incorporated by reference into the complaint because Plaintiffs have cited them to support their claim that the Products can be habit forming. *See* ECF No. 53 at 3.

Plaintiffs argue that while the seventeen scientific studies and articles cited by them in their SAC may be incorporated by reference, the Court should only take notice of those articles' existence and not consider P&G's own interpretation of the articles' "merits, methods, findings, or scope." ECF No. 59 at 7.

The Court finds that Exhibits 4–20 have been incorporated by reference. First, Plaintiffs do not dispute the authenticity of any of these documents, and the SAC references them repeatedly. *See generally* ECF No. 47. Second, Plaintiffs allege that these sources demonstrate that diphenhydramine is capable of being habit forming. *See, e.g.*, *id.* ¶¶ 14–15, 28–29. Because each document forms the basis for a necessary element of Plaintiffs' claims—i.e., that the Habit Representations are false—each is properly incorporated by reference. *See Khoja*, 899 F.3d at 1002. The Court thus grants the requests for judicial notice as to Exhibits 4–20 as to their existence but, as discussed further below, declines to consider the documents on the merits beyond their general conclusions.

### V. DISCUSSION

#### A. Preemption

P&G argues that Plaintiffs' state-law claims are preempted by 21 U.S.C. § 379r because the FDA has "already considered whether diphenhydramine could be habit forming and repeatedly concluded that the medicine has no such effect." ECF No. 52 at 20–22.

The Court's previous order considered the preemptive effect of the FDA's tentative final monograph and final monograph regarding OTC nighttime sleep-aids and declined to find Plaintiffs' state-law claims preempted. *See* ECF No. 45 at 8. P&G now urges the Court to reexamine the FDA's regulatory history regarding diphenhydramine and has also provided two approval letters that the FDA sent in the ANDA process regarding diphenhydramine products as

well as a July 31, 2007 report titled *Side Effects of Sleep Drugs*, published by the FDA on its website.  *See* ECF No. 52 at 21; ECF Nos. 53-2, 53-4, 53-5.

"Preemption of state law, by operation of the Supremacy Clause, can occur in one of several ways: express, field, or conflict preemption."  *Cohen v. Apple Inc.*, 46 F.4th 1012, 1027 (9th Cir. 2022) (quoting *Beaver v. Tasadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016)).  Enacted as Section 751 of the Food and Drug Administration Modernization Act of 1997, Pub L. No. 105-115, 111 Stat. 2374-76 (1997), Section 379r(a) includes an express preemption clause that provides that "no State . . . may establish or continue in effect any requirement . . . that is different from or in addition to, or that is otherwise not identical with" federal law.  21 U.S.C. § 379r(a); *see Carter v. Novartis Consumer Health*, 582 F. Supp. 2d 1271, 1279 (C.D. Cal. 2008).  Effectively, "Section 379r(a) preempts state law claims to the extent that those claims 'would [] require a manufacturer to include additional or different information on a federally approved label.'"  *Morgan v. Albertsons Companies, Inc.*, No. 22-CV-02948-JST, 2023 WL 3607275, at *5 (N.D. Cal. Mar. 13, 2023).  "[C]laims are not preempted to the extent that they are at variance with the FDA-approved label."  *Id.*  And in a similar vein, "state law claims 'that go beyond the FDA-approved labeling and advertising,' are not preempted because such claims would not be 'at variance with FDA regulations.'"  *Id.* (quoting *Carter*, 582 F. Supp. 2d at 1283, 1286).

Because the Court has already explained in its previous order why the FDA's drafting history of its tentative final monograph and final monograph regarding OTC-sleep aids do not support preemption, ECF No. 45 at 7–8, it addresses only the new FDA documents submitted by P&G—which the Court also finds do not require preemption.

First, P&G points to two approval letters where the FDA approved for marketing two cough syrups containing diphenhydramine and their corresponding labels describing the products as "non-habit forming."  ECF No. 52 at 24.  Those products involved cough medicines where the approved dosages were two teaspoons (25 mg diphenhydramine total) every 4 hours, for up to 75 mg over 12 hours.  ECF No. 52 at 24 (citing ECF Nos. 53-2, 53-4).  P&G argues that because the FDA approved the "non-habit forming" label "on a product that contains a higher dosage of diphenhydramine than ZzzQuil [] *after* it observed in the tentative final monograph that such

7

language might be misleading, [] the FDA had by that time reversed its tentative view as it evaluated additional studies." ECF No. 52 at 24 (emphasis in original).

The Court is not persuaded. While the maximum *daily* dosage of diphenhydramine suggested for the cough medicines is greater than that of ZzzQuil (50 mg), the amount of diphenhydramine present *per dose* in the cough medicines (25 mg) is less than that of ZzzQuil (50 mg). Moreover, Plaintiffs argue that cough medicines are "entirely different products" from sleep aids, particularly because cough medicines "are intended for infrequent use only when someone has a cough," whereas sleep aids "relate to a daily occurrence [and] are intended for more regular use than a sporadic need for a cough remedy." ECF No. 58 at 22. Critically, "state law claims related to advertising that are 'premised ultimately upon the inadequacy of the product label' are treated the same as a state law claim about the label itself," so the preemptive effect of a federally approved product label extends to advertising materials that are "materially identical" to the representation on the approved product label. *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1290 (9th Cir. 2021) (quoting *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 561 (9th Cir. 1995)). Because the above differences between the cough medicines and ZzzQuil render them *not* "materially identical," the FDA's approval of the product labels submitted by P&G do not preempt Plaintiffs' claims here regarding ZzzQuil.

The Court is similarly unpersuaded by P&G's argument that because the FDA approved the "non-habit forming" cough-medicine labels after it published its tentative final monograph, the FDA must have "reversed its tentative view [on diphenhydramine being potentially habit forming] as it evaluated additional studies." ECF No. 52 at 24. The key inquiry under Section 379r(a) is whether the state law claims "would [] require a manufacturer to include additional or different information on a federally approved label." *Morgan, Inc.*, 2023 WL 3607275, at *5 (internal quotation marks omitted). Here, there is no federally approved label for ZzzQuil as to the Habit Representations. And the circumstantial evidence surrounding the approval of a different drug with a different dosage—even if containing the same main ingredient—does not pose the risk of conflicting factual determinations about whether ZzzQuil specifically is habit forming.

Finally, P&G argues that Plaintiffs' claims are preempted because the FDA stated in a

2007 consumer information booklet published on its website that "OTC sleep aids are non-habit forming." ECF No. 52 at 24. Because the 2007 FDA booklet is merely informational and does not carry the force of law for purposes of the preemption inquiry, it has no bearing on the Court's preemption analysis. *See Morgan v. Albertsons Companies, Inc.*, No. 22-CV-02948-JST, 2023 WL 3607275, at *6 (N.D. Cal. Mar. 13, 2023)

Accordingly, the Court declines to find Plaintiffs' state-law claims preempted.

### B.  Failure to State a Claim

#### 1.  UCL, FLA, CLRA

To succeed on their state law claims, Plaintiffs must prove that P&G made false or deceptive statements. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (holding that claims under the UCL, FAL, and CLRA "require[] that [plaintiffs] 'show that members of the public are likely to be deceived'" (citation omitted)). The Ninth Circuit has made clear that granting a motion to dismiss is appropriate only in "the rare situation" where the facts make "it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Under the reasonable consumer standard, "information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

The Court previously found that Plaintiffs in their first amended complaint failed to cite materials sufficient to "demonstrate that ZzzQuil or diphenhydramine can actually lead to habit formation when used over prolonged periods." ECF No. 45 at 13. More specifically, the Court found that while Plaintiffs cited numerous articles generally discussing the rise of sleep-aids and how habits are formed, Plaintiffs included only one source addressing whether ZzzQuil products and diphenhydramine could cause habit formation—and this single article did not include citations to any clinical studies. *Id.* at 12–13. Plaintiffs have since amended their complaint to include citations to a variety of scientific studies and articles. *See, e.g.*, ECF No. 47 ¶¶ 14–15, 28–29.

Some of the most directly relevant materials include: (1) a declaration submitted by Dr. Antonia Nemanich ("Nemanich Declaration") in which she refers to "[c]linical case reports [that]

9

document that patients who initially take diphenhydramine as directed often escalate their dosages to excessive levels," discusses how the progressive use of diphenhydramine "can result in dependency on the drug and withdrawal symptoms when its use is discontinued," and concludes that "diphenhydramine is habit-forming with regular use," ECF No. 47-5 ¶¶ 8, 12; (2) a 2008 study where the researchers detected "a cocaine-like pattern of stimulation of [dopamine] transmission" in rats after the rats were provided with intravenous doses of diphenhydramine;[1] (3) a 2002 study finding that individuals rapidly developed tolerance to the sedative effects of diphenhydramine when administered a 50 mg dose twice a day;[2] and (4) a 2021 study reporting a 63% increase in intentional diphenhydramine exposures from 2005 to 2016, including a 230% rise in misuse among adults aged 55 and older.[3]

P&G argues that Plaintiffs' SAC continues to lack evidence capable of establishing that ZzzQuil or diphenhydramine can be habit forming when used as directed. ECF No. 52 at 12. The heart of P&G's argument is that the numerous scientific sources now cited by the SAC do not support Plaintiffs' claims because the sources either (1) do not focus on diphenhydramine specifically, (2) are based on anecdotes, (3) involve the significant abuse of diphenhydramine rather than the use of the drug as directed, or (4) involve studies that expose test subjects to diphenhydramine at levels exceeding 50 mg per day. *See id.* at 13–19. P&G further challenges the Nemanich Declaration for relying on a review of these same flawed sources. *Id.* at 19–20.

Unlike with the Plaintiffs' first amended complaint, the Court now finds that Plaintiffs have sufficiently bolstered their SAC with sources that demonstrate that diphenhydramine can lead to habit formation when used over time. While P&G raises several challenges to the methodology, limitations, and comparability of the scientific sources (which P&G has moved to incorporate by reference), the Court finds that the sources discussed above sufficiently support Plaintiffs' claims regarding habit formation for diphenhydramine consumption. Plaintiffs have

---

[1] Gianluigi Tanda, et al.*, Cocaine-Like Neurochemical Effects of Antihistaminic Medications*, 106 J. Neurochem. 147, 147 (2008), ECF No. 53-19 (Ex. 17).
[2] Gary S. Richardson, et al., *Tolerance to Daytime Sedative Effects of H1 Antihistamines*, 22 J. of Clin. Psychopharmacology 511 (2022), ECF No. 53-21 (Ex. 19).
[3] Antonia Nemanich, et al., *Increased rates of Diphenhydramine Overdose, Abuse, and Misuse in the United States, 2005–2016*, 59 Clinical Toxicology 1 (2021), ECF No. 53-6 (Ex. 4).

included citation to scientific studies that support their claim that even the directed usage of diphenhydramine can lead to dependency, tolerance, and abuse. *See* ECF No. 47 ¶¶ 14–15, 28–29.

And heeding the Ninth Circuit's warning in *Khoja* regarding the overuse of incorporation-by-reference, the Court declines to use these "extrinsic documents to resolve competing theories against the complaint [and] risk[] premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. As one other court in this district explained, "[t]he cited studies reference at least [the diphenhydramine] identified in the complaint and purport to document their [tendency for misuse and potential habit formation]. Discovery may expose that those studies contain vital flaws, but it is enough for now that the studies do not plainly refute the allegations in the complaint." *Locklin v. StriVectin Operating Co., Inc.*, No. 21-CV-07967-VC, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022); *see also Graham v. Cent. Garden & Pet Co.*, No. 22-CV-06507-JSC, 2023 WL 2744391, at *2 (N.D. Cal. Mar. 30, 2023) ("Defendant's interpretation of the studies requires the Court to draw inferences in its favor, whereas the Court must draw all reasonable inferences in Plaintiff's favor at the motion to dismiss stage.") (internal citations omitted); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992–93 (9th Cir. 2018) (per curiam) (finding that the persuasiveness of an admissible report by an expert is for the factfinder to decide).

Accordingly, the Court finds that Plaintiffs have sufficiently stated a claim under the UCL, FLA, and CLRA.

### 2. Express Warranty

P&G argues that Plaintiffs have failed to state an express warranty claim because their claim "seeks to recover the entire purchase price of the medicine" rather than "'the diminution in value between the [product] as warranted and the [product] as sold,'" and Plaintiffs have not alleged that the Products would lose all their value without the Habit Representation. ECF No. 52 at 26 (quoting *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 966 (N.D. Cal. 2018)).

While P&G recites the correct standard for measuring the damages under a breach of express warranty claim, P&G have not cited to—and the Court is not aware of—any cases that require dismissal of a breach of warranty claim for seeking the incorrect damages. And as

11

1    Plaintiffs counter, Plaintiffs allege that they have suffered "economic losses . . . including . . . the

2    amounts paid for the Products"—not that the amount they *seek to recover* is the total amount paid.

3    *See* ECF No. 58 at 25 (quoting ECF No. 47 ¶ 127).  Indeed, Plaintiffs allege elsewhere in their

4    SAC that they overpaid a "premium" for the Products, *see* ECF No. 47 ¶¶ 3, 4, 6, 45, 81, 89, 97,

5    including that they seek "a monetary recovery of the price premium Plaintiffs and consumers

6    overpaid for [Defendant's] Products." *Id.* ¶ 6.

7    The Court thus declines to dismiss Plaintiffs' express warranty claim.

### 3.    **Implied Warranty of Merchantability**

9    P&G next argues that the Court should dismiss Plaintiffs' claim for breach of implied

10   warranty of merchantability because (1) Plaintiffs cite only to the code section for express

11   warranties in their SAC, *see* ECF No. 47 ¶¶ 122–30 (citing Cal. Comm. Code § 2313); (2) the

12   implied warranty claim falls with the express warranty claim; (3) Plaintiffs have not alleged that

13   ZzzQuil is not fit for the ordinary purpose of such goods; and (4) Plaintiffs do not allege privity of

14   contract with P&G or identify any exceptions to the privity requirement.

15   Because the Court finds that Plaintiffs have adequately stated a claim for breach of express

16   warranty, Plaintiffs have also adequately stated a claim for breach of the implied warranty of

17   merchantability premised on the same mislabeling.  *See DiGiacinto v. RB Health (US) LLC*, 668

18   F. Supp. 3d 950, 966–67 (N.D. Cal. 2023) (holding that "since the breach of express warranties

19   claim is sufficiently pleaded, the court denies the motion to dismiss the breach of implied

20   warranties claim") (citing *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal.

21   2017)).

22   Nevertheless, the Court will briefly address the remainder of P&G's arguments.  First,

23   while Plaintiffs do cite to the code section governing express warranties (Cal. Comm. Code

24   § 2313), they set out their allegations regarding the breach of the implied warranty of

25   merchantability clearly and separately in its own section so as to give P&G notice of this cause of

26   action.  *See* ECF No. 47 ¶ 125.

27   Second, as this Court explained in its previous order, the implied warranty can be violated

28   if the products (1) are not "fit for the ordinary purposes for which such goods are used," or (2) do

12

not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314. Although P&G argues that Plaintiffs have not alleged that ZzzQuil is not "fit for the ordinary purposes for which such [consumer] goods are used," Plaintiffs' implied warranty claim is not based on that prong of the statute. Rather, Plaintiffs argue that P&G's products do not "conform to the promises or affirmations of fact made on the Products' packaging and labeling." ECF No. 47 ¶ 125.

Finally, contrary to P&G's argument, Plaintiffs have identified an exception to the privity requirement. Plaintiffs correctly identify in their opposition that "[w]hile vertical contractual privity between parties is usually required to establish the existence of an express warranty in California, . . . the California Supreme Court has recognized an exception to the privity requirement where '"the plaintiff relies on written labels or advertisements of a manufacturer."'" ECF No. 58 at 27 (quoting *Clemens v. DaimlerChrysler Corp.*, 530 F.3d 852, 858 (9th Cir. 2008)). Because Plaintiffs' implied warranty claim is based on the written labels and advertisements surrounding the sale of P&G's products, the above exception to the privity requirement applies.

### 4. Unjust enrichment

P&G last argues that Plaintiffs' unjust enrichment claim is barred because Plaintiffs' express warranty claim impliedly alleges that there is an express contract governing the sale of ZzzQuil.

Under California law, "a quasi-contract action for unjust enrichment does not lie where [] express binding agreements exist and define the parties' rights." *E.g., California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172 (2001). This Court has previously found that a plaintiff cannot plead both an unjust enrichment claim and an express warranty claim if the latter is based upon a valid express contract covering the same subject matter as the former. *See Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018) (finding that the new vehicle warranty was a valid express contract that barred the plaintiff's unjust enrichment claim).

Here, however, Plaintiffs do not bring their express warranty claim based on any express contract. Rather, Plaintiffs allege that "no express agreement existed between the parties due to

13

their lack of privity," ECF No. 58 at 27–28, and they bring their express warranty claim based on the "labeling and advertising" surrounding the sale of ZzzQuil, ECF No. 47 ¶ 124. The Court thus finds that there is no express agreement that bars Plaintiffs' unjust enrichment claim and declines to dismiss Plaintiffs' unjust enrichment claim. *See Shin v. Sanyo Foods Corp. of Am.*, No. 2:23-CV-10485-SVW-MRW, 2024 WL 4467603, at *4 (C.D. Cal. Aug. 13, 2024) ("[B]ecause Plaintiff did not purchase the goods in question directly from Sanyo Foods, there is no express agreement between Plaintiff and Defendants. Therefore, Plaintiff's quasi-contract claim is not barred by her express warranty claim."); *but see Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1033 (N.D. Cal. 2016) ("Even though there was no *written* contract at issue in this case, Plaintiffs still allege an express contract by alleging Count 1. Thus, no quasi-contract claim may stand.").

## CONCLUSION

For the foregoing reasons, P&G's motion to dismiss denied.

**IT IS SO ORDERED.**

Dated: April 4, 2025



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

14